IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RAKEEM JACKSON, | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 18-1660 |
| | : | |
| CITY AND COUNTY OF | : | |
| PHILADELPHIA, et. al., | : | |
| *Defendants.* | : | |

## MEMORANDUM

### I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (ECF No. 14), Plaintiff's Response (ECF No. 22), and Defendants' Reply (ECF No. 23).

### II. BACKGROUND[1]

This action stems from two robberies that occurred on May 20, 2014 (the "May 20 Robbery") and May 24, 2014 (the "May 24 Robbery"). The May 20 Robbery occurred at 2500 S. 6th Street in Philadelphia. ECF No. 14-2 at 1. This robbery occurred at 10:15 p.m. and the perpetrators used a firearm to commit the robbery. *Id.* The May 24 Robbery occurred at 2239 S. Bonaffon Street in Philadelphia. ECF No. 14-5 at 1-2. This robbery occurred around roughly 4:30 a.m. and also involved a firearm used by the perpetrators. *Id.* In that robbery, the assailants stole the victim's vehicle, while also kidnapping the victim. *Id.* The

---

[1] The following background is the undisputed material facts from the record.

1

assailants drove the victim's vehicle to numerous ATMs (with the victim being held hostage in the vehicle), withdrawing $980.00 of the victim's money. ECF No. 14-8 at 1-2. The victim was released by the perpetrators after roughly twenty (20) transactions. *Id.*; ECF No. 14-5 at 2. The May 20 Robbery and the May 24 Robbery were both committed by two individuals. ECF No. 14-5 at 2; ECF No. 14-2 at 1. On or around May 24, 2014, Defendant Detective Joseph Marano received an email from Matt Clydesdale of RBS Citizens outlining the successful and attempted ATM withdrawals by the perpetrators during the May 24 Robbery. ECF No. 14-8 at 1-2. In a separate email, Mr. Clydesdale sent Defendant Marano five (5) ATM photos from the "fisheye" surveillance camera located at one of the ATMs that the perpetrators visited during the May 24 Robbery. *Id.* Importantly, there is only one picture in which the top of the perpetrator's right hand appears. *Id.* at 4.

On May 28, 2014, a third robbery (and carjacking) took place involving two individuals and a firearm. ECF No. 14-9 at 2-3. However, the one perpetrator, after being pursued by the police, was apprehended that same evening. *Id.* The individual that was arrested was Lamar White, AKA Demetrius Jackson. *Id.* Lamar White is Plaintiff's brother. ECF No. 14-5 at 2. After Lamar White's arrest, the May 24 Robbery victim then positively identified Lamar White as one of the perpetrators in the May 24 Robbery. ECF No. 14-9 at 2. Specifically, the

May 24 Robbery victim identified Lamar White as the driver of his stolen vehicle. *Id.* Lamar White was subsequently charged in connection with the May 24 Robbery and the May 28 robbery/carjacking. ECF No. 14-5 at 2. After Lamar White was arrested, the May 24 Robbery victim was shown a photo array in order to identify the second assailant, i.e., the assailant that withdrew the victim's money from the ATMs. *Id.* Plaintiff's photo was included in that photo array. *Id.* According to Plaintiff's arrest report, his photo was included in the photo array because he is Lamar White's brother, he previously reported his address to be the same as Lamar White's, and he had a "strong resemblance" to the perpetrator in the ATM photos that the Defendants obtained. *Id.* The May 24 Robbery victim identified two individuals in the photo array as potentially being the second assailant. *Id.* Plaintiff was one of the two individuals identified. *Id.* Then, on May 29, 2014, the May 20 Robbery victim was shown a photo array that also contained Plaintiff's photo. *Id.* The May 20 Robbery victim positively identified Plaintiff as one of the two assailants in that robbery. *Id.*

On May 29, 2014, a search warrant was issued to search Lamar White's residence located at 1311 S. 29th Street. ECF No. 14-12 at 3. The search warrant was issued "to collect evidence, identify the Coconspirator, and further this investigation." *Id.* While executing the search warrant, Lamar White and Plaintiff's sister, Tyisha Godwin, entered the premises. ECF No. 14-5 at 2.

Plaintiff's sister briefly spoke with Defendant, Detective Joseph Marano, and Sergeant James Kearney.[2] *Id.* Defendant Marano asked Plaintiff's sister to look at one of the ATM photos that depicted the perpetrator from the May 24 Robbery. *Id.* After viewing the ATM photo, Plaintiff's sister positively identified Plaintiff as the individual in the photo and stated, "that's Rakeem." *Id.*; ECF No. 14-15 at 1-2. Plaintiff then arrived at the premises[3] and was placed under arrest by Defendants, Officer Timothy McGinn and Officer Anthony Anzideo. ECF No. 14-5 at 2. Recovered from the premises was a dark gray front zipper hooded sweatshirt that matched the sweatshirt the perpetrator was wearing in the ATM photo and contained an appointment card with the Plaintiff's name on it. *Id.*; ECF No. 22-6 at 34. On June 27, 2014, Defendant Marano received the full video from the ATM that captured the May 24 Robbery perpetrator. ECF No. 14-21. After viewing this ATM video, Defendant Marano turned the video over to the Assistant District Attorney that was handling the case. ECF No. 22-6 at 31.

Based on the identifications and evidence recovered against him, Plaintiff was charged with 1) robbery; 2) conspiracy; 3) possession of an instrument of crime; 4) aggravated assault; 5) simple assault; 6) recklessly endangering another person; 7) terroristic threats; 8) unlawful restraint; 9) theft by unlawful taking; 10)

---

[2] Plaintiff withdrew his claims against Sergeant Kearney. *See* ECF No. 22-2 at 4 n.5.
[3] According to the record, it appears that Plaintiff's arrival at the premises was purely coincidental.

4

firearm carried without a license; 11) firearm carried in public; and 12) theft by receiving stolen property in connection with the May 20 Robbery. ECF No. 14-22 at 5-6. For the May 20 Robbery, the Grand Jury indicted Plaintiff for 1) Robbery; 2) Conspiracy; 3) Possession of an instrument of crime; and 4) aggravated assault. *Id.* at 6.

For the May 24 Robbery, Plaintiff was charged with 1) aggravated assault; 2) robbery; 3) robbery of a motor vehicle; 4) kidnapping; 5) conspiracy; 6) intimidation; 7) possession of an instrument of crime; 8) simple assault; 9) recklessly endangering another person; 10) terroristic threats; 11) unlawful restraint; 12) false imprisonment; 13) theft by unlawful taking; 14) unauthorize use of motor vehicle; 15) firearm carried without a license; 16) firearm carried in public; and 17) theft by receiving stolen property. ECF No. 14-24 at 4. For the May 24 Robbery the Grand Jury indicted Plaintiff for 1) robbery of a motor vehicle; 2) kidnapping; 3) intimidation; 4) possession of an instrument of crime; 5) aggravated assault; 6) conspiracy; and 7) robbery. *Id.* at 5.

During Plaintiff's trial for the May 20 Robbery,[4] Plaintiff's attorney gave the District Attorney a photo of Plaintiff from 2010 that depicted a tattoo on Plaintiff's right hand. ECF No. 14-23 at 1-3. However, this photo was not shown to the jury after the Judge sustained the Commonwealth's objection. *Id.* at 1. The jury then

---

[4] The trial took place from March 20, 2017 through March 29, 2017.

returned a not guilty verdict as to the robbery, conspiracy, and possession of an instrument of crime charges. ECF No. 14-22 at 6. The aggravated assault charge was nolle prossed. *Id.* On May 1, 2017, Plaintiff's attorney sent the District Attorney a letter requesting the charges from the May 24 Robbery be nolle prossed because of the photo depicting the tattoo on Plaintiff's right hand. ECF No. 14-23 at 1. In that letter, Plaintiff's attorney argued that the Plaintiff's right hand tattoo exonerates Plaintiff because the perpetrator that committed the May 24 Robbery did not have a tattoo on his right hand according to the ATM photos. *Id.* On May 2, 2017, the charges from the May 24 Robbery against Plaintiff were nolle prossed.[5] ECF No. 14-24 at 6.

On April 4, 2018 Plaintiff initiated the instant matter by filing a Complaint against the City and County of Philadelphia, Sergeant James Kearney, Detective Vincent Parker, Detective Joseph Marano, Detective James Brady, Detective Matthew Carey, Officer Timothy McGinn, Officer Anthony Anzideo, and Police Commissioner Richard Ross. ECF No. 1. Plaintiff has since withdrawn his claims against Sergeant Kearny, Detective Brady, and Detective Carey. ECF No. 22-2 at 4 n.5, n.6, n.7. Plaintiff's Complaint asserts the following causes of action[6]:

---

[5] The record is unclear as to why the May 24 Robbery charges against Plaintiff were nolle prossed.
[6] According to Plaintiff's Complaint, Plaintiff is only asserting these causes of action in connection with his arrest for the May 24 Robbery. Nowhere in Plaintiff's Complaint does he mention or infer that these causes of action apply to his arrest for the May 20 Robbery. Therefore, this Court will not address any evidence in the record that is solely connected to the May 20 Robbery.

6

1. Violation of 42 U.S.C. §§ 1983 and 1985 While Acting Under the Color of State Law against Defendant City and County of Philadelphia ("*Monell* Claim");

2. Violation of Fourth and Fourteenth Amendment of the United States Constitution and Article I of the Pennsylvania Constitution Due Process Rights secured by 42 U.S.C. § 1983 against all Defendants;

3. Violation of Civil Rights While Acting Under Color of Law For failure to Intervene Under 42 U.S.C. § 1983 against Defendant Ross;

4. Conspiracy to Violate Constitutional Civil Rights and Other Rights in Violation of 42 U.S.C. § 1983 against all Defendants;

5. False Arrest Under Federal Law against all Defendants;

6. Malicious Prosecution and Abuse of Process Pursuant to 42 U.S.C. § 1983 against all Defendants;

7. Failure to Supervise against Defendant Ross;

8. False Imprisonment Under Federal Law against all Defendants;

9. Violation of Fourth Amendment's Guarantee of Freedom from Unreasonable Search against all Defendants[7];

10. Violations of State Law Claims for False Arrest, False Imprisonment, Malicious Prosecution against all Defendants.

---

[7] This cause of action was withdrawn by Plaintiff. *See* ECF No. 22-2 at 21.

ECF No. 1 at 8-19.

On November 16, 2018 Defendants filed their Motion for Summary Judgment. ECF No. 14. This Court heard counsels' arguments on Defendants' Motion for Summary Judgment on December 11, 2018. This matter is scheduled for a date certain on January 28, 2019.

## III. DISCUSSION

Summary judgment "is appropriate where the moving party has established 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* When reviewing a motion for summary judgment, the court views "the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Id.* Although, "the non-moving party must present more than a mere scintilla of evidence," and must present evidence on which a jury could reasonably find for that party. *Id.* (internal quotation and citation omitted).

A. Plaintiff's *Monell* Claim.

In order to properly state a claim under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the plaintiff must present evidence that demonstrates that the city's failure to properly

8

train its officers reflected "a deliberate or conscious choice by policy making officials, such that one could call it the [c]ity's policy or custom. The policy to train must amount to deliberate indifference to the rights of persons with whom police come into contact." *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003) (internal quotations omitted). "[T]he [c]ity's decisions must be the moving force behind an actual constitutional violation." *Id.* at 124-25 (internal quotations omitted).

Other than reciting language from his Complaint, the only argument Plaintiff makes in his Response to Defendants' Motion for Summary Judgment to support his *Monell* Claim is the unsworn expert report of Clinton Lowery. However, the Court is unable to consider expert reports that are not sworn to under penalty of perjury. *See Burrell v. Minnesota Min. Mfg. Co.*, 2011 WL 5458324 at *1 n.1 (E.D. Pa. June 9, 2011) (noting that expert reports that were not sworn to under penalty of perjury could not be considered by the court); *see also* 28 U.S.C. § 1746. Therefore, Plaintiff's only assertion the Court can consider as to whether he demonstrated a policy or practice of the City of Philadelphia that is deliberately indifferent to his constitutional rights is his iteration of paragraph 42 of his Complaint. Plaintiff, however, cannot oppose Defendants' Motion for Summary Judgment by simply referring to his Complaint. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-26, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P.

56(c). Because Plaintiff has not cited to any depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or any other materials, he has failed to present affirmative evidence to defeat Defendants' Motion for Summary Judgment on his *Monell* Claim. *See* Fed. R. Civ. P. 56(c). Therefore, because Plaintiff has not presented any evidence that demonstrates that the Defendant City is liable under *Monell*, the Court grants Defendant's Motion for Summary Judgment as to Count I of Plaintiff's Complaint.

B. Fourteenth Amendment Violations.

Plaintiff alleges in Count II of his Complaint that Defendants' actions violated his Fourth Amendment rights, his Fourteenth Amendment due process rights, and his rights under Article I Section 8 of Pennsylvania's Constitution. ECF No. 1 at 11. Plaintiff also, in Counts V, VI, and VIII, asserts claims for false arrest, malicious prosecution/abuse of process, and false imprisonment under § 1983. *Id.* at 14-18.

When a plaintiff's "claims for malicious prosecution, false imprisonment and false arrest all invoke the Fourth Amendment, [a plaintiff] 'cannot resort to Fourteenth Amendment due process principles.'" *Williams v. City of Philadelphia*, 2010 WL 4181873, at *5 (E.D. Pa. October 22, 2010) (quoting *Martinez v. Warner*, 2008 WL 2331957, at *16 (E.D. Pa. June 5, 2008)). In other words, "'if a constitutional claim is covered by a specific constitutional provision, such as the

Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)); *see also Spiker v. Whittaker*, 553 F. App'x 275, 278 n.3 (3d Cir. 2014). Because a Fourteenth Amendment due process claim is not appropriate in this matter where the Plaintiff pleads a specific constitutional violation, the Court dismisses Plaintiff's Fourteenth Amendment claim in Count II. *See Williams*, 2010 WL 4181873, at *5.

C. Probable Cause Claims.

To properly state a claim for relief under § 1983, "a plaintiff must allege a person acting under the color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). An "arrest without probable cause is a constitutional violation actionable under section 1983." *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

11

> Although, generally, the question of probable cause in a section 1983 damage suit is one for the jury, a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to [p]laintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly.

*Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

In the instant matter, if the record demonstrates that probable cause existed at the time of Plaintiff's arrest, Plaintiff's claims under Count II, failure to intervene[8] (Count III), conspiracy under § 1983 (Count IV), false arrest under § 1983 (Count V), malicious prosecution/abuse of process under § 1983 (Count VI), failure to intervene[9] (Count VII), and false imprisonment under § 1983 (Count VIII) all fail as a matter of law because for these causes of action to succeed at trial, there must have been no probable cause at the time of Plaintiff's arrest.

Here, probable cause existed at the time of Plaintiff's arrest.[10] As this Court will outline below, there was reasonably trustworthy information and evidence that

---

[8] A claim for failure to intervene requires the existence of a constitutional violation, such as no probable cause during an arrest. *Bryant v. City of Philadelphia*, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012). If the record demonstrates that there was no constitutional violation, the failure to intervene claim must then fail. *Id.* ("As a failure to intervene claim requires the existence of a constitutional violation, Plaintiff has also failed to meet his burden with respect to his [failure to intervene] claim . . . .").

[9] Just like a claim for failure to intervene, a claim for failure to supervise also requires the existence of a constitutional violation. *Garcia v. County of Bucks, Pa.*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) ("[A] plaintiff must show that the cause of his harm was a constitutional violation . . . ."). If there is no constitutional violation, then there can be no failure to supervise claim. *Id.*

[10] Because the record demonstrates that probable cause existed at the time of Plaintiff's arrest, this Court need not address any further inquiries about whether qualified immunity applies. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 272 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *see generally Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

the Defendants possessed that would warrant a reasonable person to conclude that Plaintiff had committed the May 24 Robbery. The following facts, when viewed in a light most favorable to Plaintiff, demonstrate that probable cause existed:

1. Plaintiff's sister identified him as the perpetrator in the ATM photo from the May 24 Robbery;

2. the May 20 Robbery victim positively identified Plaintiff from a photo array as one of the perpetrators in that robbery and there were similarities between the May 20 Robbery and May 24 Robbery;

3. the May 24 Robbery victim identified Plaintiff from a photo array as one of two possible perpetrators in that robbery;

4. Defendant Marano's own perception of the "strong resemblance" between the perpetrator and the Plaintiff;

5. the discovery of the grey hooded sweatshirt at Lamar White's residence that matched the grey hooded sweatshirt from the ATM photo and contained an appointment card with Plaintiff's name on it;

6. Plaintiff having the same residence as his brother, Lamar White, who was arrested committing a robbery and the second perpetrator escaped from the May 24 Robbery that Mr. White was arrested for.[11]

---

[11] The Defendants in their Motion for Summary Judgment directed the Court to twelve (12) facts that they believed support probable cause. ECF No. 14 at 10-11.

Not only do these facts, taken as a whole, demonstrate that probable cause was present, Plaintiff's sister's identification of Plaintiff as the perpetrator in the ATM photo, alone, may have been sufficient for probable cause. Although Plaintiff's sister was not a witness to the May 24 Robbery, her intimate knowledge of Plaintiff's physical and facial features makes her identification of Plaintiff analogous to an identification from a single, credible witness. "It is well established that an identification from a single, credible witness can be sufficient for probable cause." *Scott v. Farrell*, 2013 WL 6474488, at *3 (E.D. Pa. December 10, 2013) (quoting *Petaccio v. Davis*, 2002 WL 32356393, at *4 (E.D. Pa. Oct. 9, 2002), *aff'd*, 76 F. App'x 442 (3d Cir. 2003)). Even though the single identification by Plaintiff's sister may have been sufficient to establish probable cause, the other evidence in conjunction with Plaintiff's sister's identification sufficiently establish that probable cause existed.

In opposition to the above facts supporting probable cause, Plaintiff asserts that the tattoo on his right hand eliminates any probable cause. However, this argument is unfounded because it is not in line with the probable cause standard. "The probable cause standard does not require officers to correctly resolve credibility determinations or conflicting evidence." *Eckman v. Lancaster City*, 529 Fed. App'x 185, 187 (3d Cir. 2013) (citing *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005)).

Here, the Court will assume that the Defendants were aware of Plaintiff's right hand tattoo at the time of his arrest; therefore, this is conflicting evidence against the facts listed above. This conflicting evidence, however, does not eliminate probable cause at the time of Plaintiff's arrest because the only photos Defendants had of the perpetrator at that time were the five (5) ATM photos from the May 24 Robbery, and of these five (5) photos, only one captures the perpetrator's right hand. Specifically, that one photo is unclear and due to the lack of clarity, it is impossible to determine whether the perpetrator had a tattoo on his right hand. *See* ECF No. 14-8 at 4. Without a clear photo of the perpetrator's right hand that definitively demonstrates whether there is a tattoo, Plaintiff's right hand tattoo, by itself, does not eliminate probable cause when there was very convincing evidence against the Plaintiff that established probable cause. Accordingly, the Court finds that the ATM photo and the tattoo on Plaintiff's hand, when viewed most favorably to Plaintiff, do not reasonably support the notion that these two pieces of evidence, when viewed together, would eliminate probable cause.[12]

Moreover, there is nothing in the record to suggest that Defendants had definitive proof that the perpetrator in the May 24 Robbery did not have any hand tattoos. The full ATM video was not received by Defendant Marano until June 27,

---

[12] Plaintiff also argues that "prior arrest photographs of Plaintiff prominently showed a tattoo on his right hand, in direct opposition to the photograph of the still." ECF No. 22-2 at 11. However, this statement is unsupported by the record and Plaintiff has not provided any evidence or photographs that support this conclusory argument.

15

2014, almost a full month after Plaintiff's arrest. Even though Defendant Marano received the ATM video, Plaintiff does not cite to anything in the record that demonstrates that the ATM video was clearer than the aforementioned ATM photo and definitively depicted the perpetrator's right hand. Plaintiff's conclusory argument that the ATM video solely exonerates Plaintiff is therefore unsupported by the record and does not eliminate probable cause.

Finally, notwithstanding the discussion set forth above, the fact that the Grand Jury indicted the Plaintiff for the May 24 Robbery, by itself, sufficiently establishes probable cause. *See Trabal v. Wells Fargo Armed Service Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (holding that a grand jury indictment sufficiently established probable cause by definition).

Based on the totality of the circumstances, there was no evidence in the record that, when viewed in Plaintiff's favor, would reasonably support a finding that no probable cause existed at the time of Plaintiff's arrest. Therefore, because the undisputed record and material facts establish probable cause for Plaintiff's arrest, summary judgment is granted in Defendants' favor as to Counts II, III IV, V, VI, VII, and VIII.

D. Supplemental Jurisdiction Over Remaining State Law Claims.

"Federal courts may exercise supplemental jurisdiction over claims that share 'a common nucleus of operative fact' with the claims over which the district

court has original jurisdiction." *Sarpolis v. Tereshko*, 625 F. App'x 594, 598 (3d Cir. 2016) (citing *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991)). If the district court dismisses the claims over which it has original jurisdiction, it may retain supplemental jurisdiction over the remaining state law claims if "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* at 599 (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotations omitted). In the instant matter, the remaining state law claims are false arrest, false imprisonment, and malicious prosecution. Because these claims share a common nucleus of operative fact as the claims over which this Court had original jurisdiction, this Court elects to retain supplemental jurisdiction over these remaining state law claims.

Pennsylvania state law claims for false arrest, false imprisonment,[13] and malicious prosecution all require probable cause to be nonexistent in order to be successful. *Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249*, 518 Pa. 517, 544 A.2d 940, 941 (1988) ("[A] cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings

---

[13] Under Pennsylvania law, "in cases where defendant purports to act for the purpose of securing the administration of the law without legal justification, false arrest is synonymous with false imprisonment . . . ." *Gagliardi v. Lynn*, 446 Pa. 144, 285 A.2d 109, 111 (1971). Therefore, in this matter, because Plaintiff alleges that Defendants acted without legal justification, i.e. probable cause, the false arrest standard also applies to the false imprisonment claim. See ECF No. 1 at ¶ 25 ("Defendants falsely arrested Plaintiff without probable cause.").

17

against the plaintiff 1) without probable cause . . . ."); *McGriff v. Vidovich*, 699 A.2d 797, 799 n.3 (Pa. Cmwlth. 1997) ("A false arrest is defined as 1) an arrest made without probable cause . . . ."). Under Pennsylvania law, probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe that the party is guilty of the offense." *Schell v. Guth*, 88 A.3d 1053, 1068-69 (Pa. Cmwlth. 2014).

Under the Pennsylvania probable cause standard, the record in this matter, when viewed in Plaintiff's favor, demonstrates that there was probable cause at the time of Plaintiff's arrest. The Court incorporates its discussion above regarding the existence of probable cause. For those reasons, summary judgment is granted in Defendants' favor as to the state law claims (Count X).

## IV. CONCLUSION

Based on the overall record viewed in a light most favorable to the Plaintiff, this Court grants summary judgment in Defendants' favor. Accordingly, Plaintiff's claims against Defendants in this matter are hereby dismissed. An appropriate order will follow this Memorandum.

DATED: January 11, 2019

BY THE COURT:

CHAD F. KENNEY, JUDGE